IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

_____

| | | |
|---|---|---|
| ARTHUR ANTHONY GONZALES, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 2:06-CV-934 DAK |
| | ) | |
| v. | ) | District Judge Dale A. Kimball |
| | ) | |
| LOWELL CLARK, | ) | **MEMORANDUM DECISION** |
| | ) | |
| Respondent. | ) | Magistrate Judge Samuel Alba |

_____

Petitioner, Arthur Anthony Gonzales, an inmate at Utah State Prison, petitions for habeas corpus relief.[1]  The Court denies him.

BACKGROUND

Petitioner and his children lived next door to the teenaged victim and her mother, to whom he was engaged.  During the engagement, the victim alleged that Petitioner made two separate sexual overtures toward her, including touching her buttocks and, after trying to hypnotize her, touching her breast and asking her to remove her top.  On another day, Petitioner committed the criminal acts at issue here, for which he was charged with one count of attempted rape and one count forcible sexual abuse.

Though he had counsel, Petitioner filed a pro se motion, asserting that the victim accused him of the crimes because she was against the engagement.  He further contended that she was untruthful, in psychological therapy, and on psychiatric

_____

[1]*See* 28 U.S.C.S. § 2254 (2009).

medication, all of which supported his defense theory:  that the victim "was a mentally disturbed teen bent on retaliation."[2]

Petitioner's counsel, Mr. Montgomery, then subpoenaed the victim's mental health records (the records) from University of Utah Neuropsychiatric Institute (UNI).  UNI wrote back that the records were protected by privilege (Utah Rule of Evidence 506) and would be released only if an affidavit declared an exception to the privilege.  Mr. Montgomery filed an affidavit, titled, "PATIENT HAS PLACED MENTAL OR PHYSICAL CONDITION AT ISSUE AS A CLAIM OR DEFENSE IN A LAWSUIT," and marked the boxes showing the victim's mental and physical condition were "an element of a claim or defense in this lawsuit."  UNI sent Mr. Montgomery the records, then called him to say that UNI should not have released the records but instead should have moved to quash the subpoenas.

Mr. Montgomery's investigators tried to serve the victim's mother with subpoenas asking the identities of the victim's mental health providers.  The prosecutor then asked that any contact with State witnesses be initiated through her.  She told Mr. Montgomery to directly serve mental health providers although she planned to move to quash any such subpoenas.  Mr. Montgomery then served subpoenas on two of the victim's therapists.

During a pre-trial conference, the prosecutor attacked Mr. Montgomery's acquisition and possession of the records.  The

---

[2] *State v. Gonzales*, 2005 UT 72, ¶ 11, 125 P.3d 878.

prosecutor argued that Mr. Montgomery had improperly obtained the
records by falsely stating that the victim had put her mental and
physical condition at issue and asked the court to take the
records.  Mr. Montgomery acknowledged he had viewed the records.
The court took and sealed them.

At a later hearing, based on Mr. Montgomery's falsehood and
unauthorized inspection of the records, the prosecutor moved to
quash the subpoenas for the records and exclude any evidence from
them.  Mr. Montgomery responded that the victim's mental state--
i.e., her inability to be truthful--was an element of the
defense.  He argued that it was therefore likely that the records
would reveal exculpatory evidence that the victim could not be
believed and so the records should be reviewed in camera under
*State v. Cardall*.[3]  Mr. Montgomery bolstered this argument,
stating that, through personal experience and attendance at a
therapy session with the victim, Petitioner knew independently of
the victim's serious emotional problems.

Quashing the subpoenas for the records, the trial court
imposed a sanction "that the information so obtained by subpoena
may not be used at trial."  The court went on to state,

> by having obtained knowledge of the witness
> which cannot now be erased, defense counsel
> has inserted a question whether the trial can
> be a fair one which is not able to be
> resolved.  Of equal concern, by tainting his

---

[3]1999 UT 51, 982 P.2d 79.

> knowledge of the case with irretractable,
> impermissible, privileged information about
> the witness, counsel appears to have created
> a conflict that calls into question the
> professional ethics of his continued
> representation of the defendant.[4]

Shortly, Mr. Montgomery filed a motion to withdraw, which the trial court granted, and he was replaced by Ms. Miller.

At trial, Ms. Miller filed a motion in limine to keep out evidence of the victim's two past allegations of Petitioner's sexual misbehavior. Ruling was deferred pending presentation of the evidence.

During her direct examination of Petitioner, Ms. Miller asked if he had ever been accused of sexual assault, to which Petitioner answered, "No." Away from the jury, the prosecutor successfully contended that Ms. Miller had opened the door for admission of prior bad acts, so the prosecutor presented the victim's past allegations. During cross-examination, Petitioner conceded he had tried to hypnotize the victim, but denied he had touched her sexually or asked her to remove her top.

Petitioner further testified that he regarded his children to be his "life." This prompted the prosecutor to ask, if that were true, why he owed back child support of $47,000. Ms. Miller objected initially, challenging foundation, but then withdrew the objection. Petitioner admitted that he owed the money.

---

[4]*State v. Gonzales*, No. 011905307, slip. op at 7 (Dist. Ct. Utah June 14, 2002).

Finally, Ms. Miller moved for admission of evidence of the misdemeanor retail theft convictions of the victim and her friend (a witness) to use to impeach them.  Disallowing the evidence under Utah Rule of Evidence 609, the trial court ruled that misdemeanor theft convictions do not qualify as dishonesty.

When the trial ended, the jury found Petitioner guilty of both attempted rape and forcible sexual abuse, for which he was sentenced to three-years-to-life and one-to-fifteen years, respectively.

On November 4, 2005, the Utah Supreme Court affirmed the convictions.  On November 3, 2006, Petitioner filed this federal petition, arguing the same issues as he did in the Utah Supreme Court[5]:  (1) that the trial court erred in granting the State's motion to quash the defense's subpoenas for the records; (2) that Petitioner's right to choice of counsel was breached; (3) that the trial court improperly denied Petitioner the chance to cross-examine the victim and other witness about previous juvenile adjudications; (4) that Petitioner's attorney was constitutionally ineffective when she opened the door to prior bad acts and withdrew an objection to irrelevant prejudicial evidence; and (5) cumulative error.  The State has responded to these arguments and requests that this Court deny the petition.

---

[5]Indeed, Petitioner's arguments here appear to be pulled almost verbatim from his brief in the Utah Supreme Court.

ANALYSIS

I.  Standard of Review

The standard of review to be applied in federal habeas cases is found in § 2254, under which this habeas petition is filed. It states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[6]

"Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error."[7]

The Court's inquiry here begins with whether the supreme court's rejection of Petitioner's claims "was contrary to, or involved an unreasonable application of, clearly established Federal law."[8]  The Court is not to determine whether the supreme court's decision was correct or whether this Court may have

---

[6]28 U.S.C.S. § 2254(d) (2009).

[7]*House v Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1345 (2009).

[8]28 U.S.C.S. § 2254(d) (2009).

6

reached a different outcome.[9]  "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited."[10]

Under *Carey v. Musladin*,[11] the first step is determining whether clearly established federal law exists relevant to Petitioner's claims.[12]  Only after answering yes to that "threshold question" may the Court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law."[13]

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[14]

In deciding whether relevant clearly established federal law exists, this Court is not restricted by the state court's analysis.[15]

---

[9]*See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

[10]*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

[11]549 U.S. 70 (2006).

[12]*House*, 527 F.3d at 1017-18.

[13]*Id.* at 1018.

[14]*Id.* at 1016.

[15]*See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*,

If this threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case."[16]  This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state decision erroneously applied clearly established federal law.[17]  "'Rather that application must also be unreasonable.'"[18]

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[19]

Finally, "[i]t is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."[20]  This Court must "give effect to state convictions to

---

540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

[16]*Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

[17]*See id.*

[18]*Id.* (quoting *Williams*, 529 U.S. at 411).

[19]28 U.S.C.S. § 2254(e)(1) (2009).

[20]*Williams*, 529 U.S. at 375.

the extent possible under law."[21]  Still, "errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ."[22]

## II.  Mental Health Record Subpoenas

Petitioner first asserts that the trial court should not have quashed the subpoenas for the records.  In concluding that the trial court did not err in quashing the subpoenas, the Utah Supreme Court decided that the trial court adequately supported its decision in two ways:  "first, because Mr. Montgomery failed to notify opposing counsel of the subpoenas, and second, because Mr. Montgomery failed to turn the records over to the court for an in camera review of the privileged information before inspecting the contents of the records."[23]  The supreme court also noted that Petitioner argued "the process by which his attorney obtained and reviewed the records was not flawed."[24]

As a preliminary matter, the Court notes that most of Petitioner's arguments and the supreme court's analysis here involve state law and application of state rules of evidence.  "A habeas petitioner is only entitled to relief, however, for alleged violations of federal rights, not for errors of state

---

[21]*Id.* at 386.

[22]*Id.* at 375.

[23]*Gonzales*, 2005 UT 72, at ¶ 25.

[24]*Id.*

law.  Generally speaking, a state court's misapplication of its
own evidentiary rules . . . is insufficient to grant habeas
relief."[25]  Therefore, this Court will not further consider
state-law-based arguments and analysis.

Now, applying the federal standard of review to this issue,
this Court reviews the part of the supreme court's analysis
touching on federal law:

> Mr. Montgomery used a flawed subpoena
> process to obtain privileged records.  His
> authority to examine those records, however
> obtained, depended on approval of the trial
> court following an in camera review.  Drawing
> on a United States Supreme Court case,
> *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.
> Ct. 989, 94 L. Ed. 2d 40 (1987), we made this
> clear in *State v. Cardall*, 1999 UT 51, 982
> P.2d 79.  We stated:
>
> > In *Ritchie*, the Supreme
> > Court held that where an
> > exception to privilege
> > allows a defendant access
> > to otherwise confidential
> > records, the defendant
> > does not have the right
> > to examine all of the
> > confidential information
> > or to search through
> > state files without
> > supervision.  However, if
> > a defendant can show with
> > reasonable certainty that
> > exculpatory evidence
> > exists which would be
> > favorable to his defense,

---

[25]*Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (citing
*Estelle v. McGuire*, 502 U.S. 62, 67, 72 (1991)); *see also Phillips v. Sirmons*,
No. CIV-01-45-JHP, 2008 U.S. Dist. LEXIS 29277, at *108 (E. Dist. Okla. Apr.
9, 2008) ("Federal courts simply do not have the authority to decide questions
concerning the admissibility of evidence under state law.").

> *Ritchie* gives him the
> right to have the
> otherwise confidential
> records reviewed by the
> trial court to determine
> if they contain material
> evidence.
> . . .
> Where "a defendant is
> aware of specific
> information contained in
> the file . . ., he is
> free to request it
> directly from the court,
> and argue in favor of its
> materiality."

*Cardall*, 1999 UT 51 at ¶¶ 30, 32, 982 P.2d 79
(citations omitted).

> Here, Mr. Montgomery was obligated to
> seek an in camera review of [the victim's]
> mental health records before searching
> through them.  Because he did not follow
> proper procedures in subpoenaing the records
> or requesting an in camera review, we affirm
> the trial court's conclusion that the
> subpoenas must be quashed.[26]

This Court noted above that *Carey v. Musladin*[27] mandates the
first step here:  determining whether clearly established federal
law exists relevant to Petitioner's claim.[28]  If the answer is
no, the inquiry ends, and this Court will examine the state
court's decision no further.[29]  This case involves a decision to
exclude mental health records, sought for purposes of witness

---

[26]*Gonzales*, 2005 UT 72, at ¶¶ 44-45 (footnotes omitted).

[27]549 U.S. at 70.

[28]*House*, 527 F.3d at 1017-18.

[29]*Id*. at 1018.

11

impeachment, based on counsel's failure to observe proper
procedure (set forth in *Ritchie* and other cases) in obtaining
them.  Petitioner has not identified any Supreme Court "case with
a materially indistinguishable set of facts" to this one.[30]  Nor
has he suggested that the state court made a decision opposite to
a Supreme Court decision on a question of law.  And, this Court
has not found any such precedent in its own research.

> Because there is no clearly established
> federal law relevant to [Petitioner's] claim,
> [the] analysis ends where it begins.  As [the
> Tenth Circuit Court of Appeals] held in
> *House*, "[a]bsent controlling Supreme Court
> precedent, it follows ineluctably that the
> [state court's] decision . . . cannot be
> either 'contrary to, or an unreasonable
> application of, clearly established Federal
> law.'"[31]

As an aside, the Court notes that Petitioner states in his
petition here,

> The only evidence Mr. Montgomery learned from
> the UUNI records was that [the victim] had
> experienced hallucinations.  Mr. Montgomery's
> own investigation revealed that [the victim]
> was psychopathic and paranoid, had a history
> of dishonesty, disliked men in general and
> particularly hated Petitioner because of his
> strict parenting rules and his relationship
> with [her mother], used drugs and alcohol,
> and suffered serious depression."

---

[30]*Walker*, 228 F.3d at 1225.

[31]*Crawley v. Dinwiddie*, 533 F.3d 1226, 1231 (10th Cir. 2008) (some
brackets & alteration in original) (quoting *House*, 527 F.3d at 1021 (quoting
28 U.S.C.S. § 2254(d)(1) (2009))).

Based on this statement, this Court concludes that Petitioner was not, in any event, constitutionally prejudiced by the trial court's decision to exclude the records from trial. Independent of the records, apparently, Petitioner had all the information or evidence he needed from counsel's investigation to support his defense theory that the victim's emotional problems motivated her to lie about the crimes. The information in the records appears to be almost entirely duplicative of the information Petitioner had obtained from outside means.

### III. Choice of Counsel

Petitioner next argues that he was deprived of his counsel of choice by the trial court's ruling that Mr. Montgomery's improper handling of the UNI subpoena created a conflict of interest that "'called into question the professional ethics of his continued representation of the defendant.'"[32] This is because, after this emphatic reproval, Mr. Montgomery voluntarily filed a motion to withdraw.

However, because Petitioner did not suggest other options or object to the trial court granting the withdrawal motion, the Utah Supreme Court determined this issue was not properly before it and did not review it. Petitioner's failure to object and preserve this issue for appeal constituted a procedural default.

---

[32] *Gonzales*, 2005 UT 72, at ¶ 46 (citation omitted).

13

"This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'"[33]  Here, Petitioner has not argued cause and prejudice to excuse his procedural default.  And, his claim of fundamental miscarriage of justice is limited to an unsupported assertion of his innocence.  "[T]o claim actual innocence a petitioner must present new, reliable evidence that was not presented at trial."[34]  Petitioner has instead done nothing but rehash and attack the evidence at trial.

IV. Witnesses' Past Juvenile Adjudications

Petitioner further contends that the trial court should have granted his motion in limine asking to cross-examine the victim and her friend about their previous juvenile adjudications for shoplifting.  The Utah Supreme Court noted that this involves "a straightforward question of evidence," with an "embedded . . . constitutional question of whether the trial court infringed [Petitioner's] right of confrontation by denying him the

---

[33]*Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (alteration omitted) (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)).

[34]*Rose v. Newton-Embry*, No. 05-6245, 2006 U.S. App. LEXIS 22713, at **4-5 (10th Cir. Sept. 5, 2006) (unpublished).

opportunity to ask [the witnesses] about their juvenile adjudications."[35]

Again, this Court does not evaluate the state court's analysis of state evidentiary rules regarding this issue,[36] but limits its review to the federal constitutional issue, application of the Confrontation Clause.

First, the threshold has been met here.  The supreme court chose the appropriate United States Supreme Court case in which the facts are at least closely-related or similar to this case: *Davis v. Alaska*.[37]  Setting forth the basic law from *Davis*, the Utah Supreme Court stated:

> The Sixth Amendment right to confrontation "guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'"  *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (quoting U. S. Const. amend. VI).  Cross-examination is the tool that gives practical effect to the right of confrontation.  *Id.*  Through its use, an accused can test the believability and truthfulness of a witness's testimony.  *Id.* at 315-16.  However, "the right of cross-examination is not without limitation." *State v. Hackford*, 737 P.2d 200, 203 (Utah 1987).  For example, "the right to cross-examine 'does not entail the right to harass, annoy, or humiliate [the] witness on cross-

---

[35]*Gonzales*, 2005 UT 72, at ¶ 47.

[36]*Bullock*, 297 F.3d at 1055 (citing *Estelle*, 502 U.S. at 67, 72; *see also Phillips*, 2008 U.S. Dist. LEXIS 29277, at *108 ("Federal courts simply do not have the authority to decide questions concerning the admissibility of evidence under state law.").

[37]415 U.S. 308 (1974).

examination, nor to engage in repetitive
questioning, nor to inquire into matters
which would expose the witness to danger of
physical harm.'"  *Id.* (quoting *State v.
Chesnut*, 621 P.2d 1228, 1233 (Utah 1980)).[38]

For several pages of its opinion in this case, the Utah

Supreme Court thoroughly analyzed *Davis*'s application here.  It

carefully compared Petitioner's original argument for using the

juvenile adjudications of the victim and witness in this case--

"to make a broadside attack on [the witnesses'] credibility"[39]--

with the reason for using the juvenile adjudication in *Davis*--to,

with an adequate foundation, "show that a witness's testimony was

the product of bias, prejudice, or a motive to lie."[40]  And, in

this case, the supreme court decided, Petitioner's argument did

not reach the required level of specificity of purpose that the

defendant in *Davis* had.

The supreme court did state that, on appeal, Petitioner

tried "to shore up the relevance of [the witnesses']

adjudications and to align his case more closely to *Davis*."[41]

Indeed, on appeal, he argued "both women had personal animus

toward him because he allowed them to stay in detention overnight

---

[38]*Gonzales*, 2005 UT 72, at ¶ 48.

[39]*Id.* at ¶ 57.

[40]*Id.* at ¶ 56.

[41]*Id.* at ¶ 58.

16

following their shoplifting arrests"[42] and "that the women had motive to lie in the hopes of pleasing law enforcement and thereby receiving more favorable treatment from the State in their own cases."[43]

However, the supreme court determined these arguments were not preserved below and were thus procedurally defaulted.  Again, "[t]his court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'"[44] None of Petitioner's arguments here satisfy the exceptions to excuse his procedural default.

Regarding the issue of the exclusion of the witnesses' juvenile adjudications, then, this Court concludes that the Utah Supreme Court identified the correct United States Supreme Court precedent to apply here.  Further, after extensively reviewing the Utah Supreme Court's thoughtful and sensible treatment of this issue and the underlying cases it cited in support, this Court cannot say the supreme court was unreasonable in applying *Davis* as it did.  The Court therefore denies Petitioner habeas relief on this issue.

---

[42] *Id.* at ¶ 58.

[43] *Id.* at ¶ 59.

[44] *Thomas*, 218 F.3d at 1221 (alteration omitted) (quoting *English*, 146 F.3d at 1259).

V. Ineffective Assistance of Counsel

Finally, Petitioner urges this Court to overturn the Utah Supreme Court's decision that his counsel was not ineffective. He forwards two specific claims:  (1) Ms. Miller "opened the door" to prior bad acts; and (2) she withdrew her objection to the State's proffer of irrelevant prejudicial evidence.

Noting again that review is tightly circumscribed by the standard of review for federal habeas claims by state prisoners, this Court observes that the Utah Supreme Court selected the correct governing legal principle with which to analyze the ineffective-assistance-of-counsel issue.[45]  It is the familiar two-pronged standard of *Strickland v. Washington*[46]:  (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms"; and, (2) prejudice to the defense caused by counsel's deficient performance.[47]  The prejudice element requires a showing that errors were so grave as to rob the petitioner of a fair proceeding, with a reliable, just result.[48]

---

[45]*Gonzales*, 2005 UT 72, at ¶ 64.

[46]466 U.S. 668 (1984).

[47]*Id.* at 687-88.

[48]*Id.*

18

As required by the standard of review, the Court now
analyzes whether the supreme court's application of *Strickland*
was reasonable.

### A. Prior Bad Acts

Ms. Miller admittedly misspoke when she asked Petitioner on
direct examination if he had ever been "accused" of sexual
assault, when she meant to ask him if he had ever been *charged or
convicted of* sexual assault.  When he answered, "No," the State
entered the open door on cross-examination to draw testimony from
Petitioner about the victim's previous accusations of sexual
assault with which he had not been charged.  Ms. Miller even
moved for a mistrial grounded on her own ineffectiveness; the
trial court denied her.  Petitioner attacks Ms. Miller's mistake
as severely prejudicial and ultimately prompting the jury's
verdict against him.

In analyzing this issue under *Strickland*, the Utah Supreme
Court determined that Ms. Miller had inadvertently used the word
"accused," which "enabled the prosecution to attack as untrue
[Petitioner's] response that he had never been accused of sexual
assault and to inquire after the details of [the victim's] past
accusations against him."[49]  But, the court did not believe the
mistake was outcome-determinative.  This is because Ms. Miller
had the chance to rehabilitate Petitioner as well as she could

---

[49]*Gonzales*, 2005 UT 72, at ¶¶ 67-68.

and because the evidence of the victim's past allegations was not inadmissible in any other way.[50]

As to Ms. Miller's rehabilitation of Petitioner, the court observed that "she did so in a manner that effectively diminished the importance of the past accusations."[51]  Ms. Miller was able to elicit responses from Petitioner that cast skepticism on the victim's motive for accusing him--i.e., that she was trying to derail his engagement to her mother.[52]  The court noted that,

> [a]lthough both parties assume that it was indeed harmful to [Petitioner's] credibility that he had previously been accused of sexual assault, he capitalized on the opportunity to attack [the victim's] credibility and turned the disclosure of the accusations to his advantage by pointing out that her own mother believed she lied about the past incident.[53]

The court went on to discuss the state-law issue of the prior bad acts' admissibility under evidentiary rule 404(b), which disallows them to show character, but allows them to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[54]  It noted that the victim's past allegations could have been admitted to show the victim's reason for not telling her mom about the

---

[50]*See id.* at ¶ 68.

[51]*Id.* at ¶ 69.

[52]*Id.*

[53]*Id.*

[54]*Id.* at ¶ 70 (quoting Utah R. of Evid. 404(b)).

attempted rape:  She had told her mom in the past about Petitioner's inappropriate touching and her mom had not taken any action, so the victim instead told her friend.[55]  This came out in the victim's testimony.  The court stated, "Because the rules of evidence would not prevent [the victim] from discussing these matters, any harm done to [Petitioner's] testimony is mitigated by the fact that it might have arisen anyway."[56]

On this issue, the court concluded "that although Ms. Miller may have asked an unintended question, any harm done would not have changed the outcome of the trial.  The evidence was likely admissible in any event and Ms. Miller effectively rehabilitated [Petitioner]."[57]

Based on its comprehensive evaluation of the supreme court's articulate and deliberate scrutiny of this issue and underlying authority, this Court is not persuaded that the supreme court's application of relevant Supreme Court precedent was unreasonable.

## B. Withdrawn Objection

Petitioner contends that Ms. Miller should not have withdrawn her objection to evidence that he was behind on his child support.  He maintains this evidence was irrelevant and unjustly prejudicial.  Here, the Utah Supreme Court recognized

---

[55]*Id.* at ¶ 70.

[56]*Id.*

[57]*Id.* at ¶ 71.

that it must accord counsel wide latitude as to her trial

decisions[58] and not "'second-guess trial counsel's legitimate

strategic choices.'"[59]

Analyzing this applicable Supreme Court precedent against

the facts of this case, the supreme court determined that Ms.

Miller's performance in this instance was neither deficient nor

prejudicial:

> Ms. Miller objected to the statement
> regarding child support arrears on the basis
> of lack of foundation.  After being provided
> with a document by the State, she withdrew
> her objection and did not renew it based on
> any other grounds.  Because Ms. Miller may
> have felt that the objection was futile and
> chose not to object for strategic reasons
> (such as not drawing attention to this
> unfortunate information), we will not
> question her strategy. . . . [Further,
> a]lthough [Petitioner] has suggested . . .
> his credibility was harmed by the
> introduction of this evidence, he has been
> unable to convince us that but for these
> mistakes, the jury would have reached a
> different result.[60]

Again, after scrupulously assessing this analysis and

supporting caselaw, this Court cannot call the state supreme

court's application of pertinent United States Supreme Court

unreasonable.

---

[58]*Id.* at ¶ 72.

[59]*Id.* (quoting *State v. Callahan*, 866 P.2d 590, 593 (Utah Ct. App. 1993) (citing *Strickland*, 466 U.S. at 689) (other citation omitted)).

[60]*Id.* at ¶¶ 72-73.

CONCLUSION

Including his final argument of cumulative error, Petitioner raises no valid grounds for federal habeas relief.  IT IS THEREFORE ORDERED that Petitioner's habeas corpus petition under § 2254 is denied.

DATED this 6th day of July, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge